UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA-EASTERN DIVISION

| | |
|---|---|
| DELORES ARLINE GRAYES, ) | Case No. EDCV 13-01239 (AS) |
| ) | |
| Plaintiff, ) | **MEMORANDUM OPINION AND** |
| ) | |
| v. ) | **ORDER OF REMAND** |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social ) | |
| Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

Pursuant to Sentence 4 of 42 U.S.C. § 405(g), IT IS HEREBY ORDERED that this matter is remanded for further administrative action consistent with this Opinion.

**PROCEEDINGS**

On July 19, 2013, Plaintiff filed a Complaint seeking review of the denial of her application for Supplemental Security Income. (Docket Entry No. 3.) The parties consented to proceed before the undersigned United States Magistrate Judge. (Docket Entry Nos. 14-15). On March 3, 2014, Defendant filed an Answer along with the Administrative Record ("AR"). (Docket Entry Nos. 21-22). The parties filed a Joint

Stipulation ("Joint Stip.") on May 8, 2014, setting forth their respective positions regarding Plaintiff's claims. (Docket Entry No. 22).

The Court has taken this matter under submission without oral argument. See C.D. Cal. L.R. 7-15; "Case Management Order," filed July 24, 2013 (Docket Entry No. 7).

**BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION**

On October 15, 2009, Plaintiff filed an application for Supplemental Social Security Income, alleging a disability since September 28, 2007. (AR 119-21, 132). On November 10, 2011, the Administrative Law Judge ("ALJ"), Jesse Pease, heard testimony from Plaintiff, lay witness Dewayne Watson, and vocational expert David Renhart. (See AR 57-76). On December 8, 2011, the ALJ issued a decision denying Plaintiff's application. The ALJ determined that Plaintiff had severe impairments -- cervical myofascial strain, lumbar myofascial strain, cervical degenerative joint disease, mild left rotator cuff tendinosis, right knee patellofemoral syndrome, hypertension, a possible min-stroke in 2010 (not confirmed), mild to moderate cardiac enlargement, and a depressive disorder[1] -- but found that Plaintiff was not disabled within the meaning of the Social Security Act. (See AR 10-21).

Plaintiff requested that the Appeals Council review the ALJ's decision. (AR 5). The request was denied on May 23, 2013. (AR 1-3). The ALJ's decision then became the final decision of the Commissioner, allowing this Court to review the decision. See 42 U.S.C. §§ 405(g); 1383(c).

---

[1] The ALJ found that Plaintiff's asthma was non-severe. (See AR 12, 15).

**PLAINTIFF'S CONTENTIONS**

Plaintiff makes three challenges the ALJ's decision. Plaintiff alleges that the ALJ erred in failing to properly: (1) assess Plaintiff's credibility; (2) reject the lay witness testimony; and (3) reject the opinions of Plaintiff's treating physician. (See Joint Stip. at 2-17, 20-36).

**DISCUSSION**

After consideration of the record as a whole, the Court finds that Plaintiff's first and second claims of error have merit and warrant a remand for further consideration. Since the Court is remanding the matter based on Plaintiff's first and second claims of error, the Court will not address Plaintiff's third claim of error.

**A.   The ALJ Failed to Properly Assess Plaintiff's Credibility**

Plaintiff asserts that the ALJ failed to provide clear and convincing reasons for finding Plaintiff not fully credible. (See Joint Stip. at 3-17, 20).  Defendant asserts that the ALJ properly assessed Plaintiff's credibility. (See Joint Stip. at 17-20).

Plaintiff made the following statements in a Pain Questionnaire dated November 21, 2009: (1) she has had throbbing pain throughout her body since 2003; (2) the pain, which lasts weeks and/or months, is brought on by stress or when she gets upset; (3) she takes various medications[2] but they do not relieve the pain, and the pain has grown

---

[2]   Amitrityline [once daily], gabapentine [twice daily], ibuprofen [every 6 hours, as needed], aspirin [once daily], hryocodone/APAP [every 4 to 6 hours, as needed] enalapril [once daily],
(continued...)

worse over time; (4) massage helps relieve the pain a little; (5) she wears a knee brace; (6) as far as daily activities, she tries to walk and do "daily things"; (7) as a result of the pain, she can no longer clean (it takes her much longer), cook, or drive, and she sometimes has difficulty getting up to go to the restroom; (8) in order to do errands, she needs the assistance of a wheelchair or a walker; and (9) She is able to walk around the yard outside her house, to stand for 10 minutes at a time (sometimes), and to sit "all the time."  (See AR 141-44).

At the hearing, Plaintiff testified to the following:

> Her last job was a part-time job providing in-home care for disabled people in 1998.  Prior to that she had worked at a race track serving food.  She has not worked much in the last 12 years because of her disability.  (See AR 59-60, 65).

> She cannot work because of pain throughout her body.  In approximately 2002, her doctors in Los Angeles told her she had fibromyalgia.  She has high blood pressure, for which she takes medicine (and heart medicine as well).  She has a history of asthma.  The last time she had an asthma attack was in 2010. She uses an inhaler less than once a week and more than once a month.  For her depression, she goes to a mental health doctor, and since August 2010 she has taken three medications (Geodone [80 mg]; Perphenazine [a generic for Trilafon]; and Welbutrin). Someone at the mental health hospital (in Arrowhead or San Bernardino) told her that she had COPD, and wrote down that she had a mini-stroke in 2010.  (See AR 60-64).

> Since she is short of breath when she walks, and since her legs and knees hurt ("[t]hey give out, they ache real bad"),

---

[2] (...continued)
and provlentil HFA [inhale every 4 hours, as needed]).  (AR 144).

4

her doctor, Dr. Rivah, gave her a walker with a seat. She has had a walker for about 4 years. (See AR 65-66).

She has pain in her hands and in her feet. She suffers cramps in her hands, and she drops things. (See AR 68).

She cannot clean her house without help. She cannot sleep without medicine, and she sleeps six hours at night with medicine. The longest she has stayed up is about 48 hours. There are days when she stays in bed. (See AR 68-69).

She can lift about a pound. She can sit for approximately 30 minutes. After 30 minutes of sitting, she has to move around (or her body locks up with muscle spasms, which can last for weeks). Without a walker, she can stand for about ten minutes. With a walker, she can stand for 15 to 20 minutes. Even with a walker, she cannot walk a block. She has fallen and injured her knees. She has problems staying on tasks or finishing tasks, she often starts to do something but forgets what she was doing, she sometimes has problems interacting with other people, and she has problems remembering things. (See AR 66-68).

The ALJ found that Plaintiff had the following residual functional capacity ("RFC"):[3] the ability to perform a range of light work[4] with certain limitations, including: lifting and carrying 20 pounds occasionally and 10 pounds frequently; standing and walking for 2 hours out of an 8-hour workday; sitting for 8 hours out of an 8-hour workday;

---

[3] A Residual Functional Capacity is what a claimant can still do despite existing exertional and nonexertional limitations. See 20 C.F.R. § 404.1545(a)(1).

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b) and 416.967(b).

5

climbing ramps and stairs occasionally, but no climbing ladders, ropes or scaffolds; balancing, stooping, kneeling, crouching and crawling occasionally; no hazardous machinery and unprotected heights; needing an assistive device if out of her immediate work area; limited to simple and repetitive tasks in a non-public environment; and no performing fast-paced work, such as with a conveyor belt.  (See AR 13).

After summarizing the testimony of Plaintiff and Dewayne Watson (Plaintiff's lay witness) (see AR 14), the ALJ wrote:  "After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant and Mr. Watson's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment herein."  (AR 15).

The ALJ then summarized the medical evidence (other than opinion evidence), and stated:

> . . . The claimant and Mr. Watson were not credible in their testimony.  They both claimed the claimant could not lift over one pound, but there is absolutely no justification for her assertions in the medical evidence.  There is no evidence the claimant requires assistance with personal grooming or getting into a car, as Mr. Watson alleged.  The claimant asserted she had a mini-stroke in 2010, but there is nothing in the record to support her testimony.  Giving the claimant the benefit of the doubt, the undersigned has included a possible mini-stroke as a medically determinable impairment.  While it is considered severe, it is only minimally so.  The claimant's credibility is further diminished by the exaggerated manner in which she presented herself during the orthopedic consultative examination, as noted by Dr. Flanagan (Exhibit B2F).  While the undersigned has accommodated the claimant by finding that the

6

claimant should use an assistive device when out of her immediate area, the record shows that the claimant has intact muscle strength and no neurological deficits. There is no mention at all of auditory hallucinations until she began treatment at the mental health clinic. Even when the claimant complained of hallucinations, there are no notes indicating that the claimant was responding to internal stimuli during the mental status examinations (See, Exhibits B11F, pp. 14, 23). All of the aforementioned factors are inconsistent with the presence of an incapacitating or debilitating medical condition. (AR 18).

A claimant initially must produce objective medical evidence establishing a medical impairment reasonably likely to be the cause of the subjective symptoms. Smolen v. Chater, 157 F.3d 1273, 1281 (9th Cir. 1996); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991). Once a claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged, and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his pain and symptoms only by articulating clear and convincing reasons for doing so. Smolen v. Chater, supra; see also Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998); Light v. Social Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997).

Here, the ALJ's finding that Plaintiff's testimony about the intensity, persistence and limiting effects of the symptoms was not fully credible was not supported by substantial evidence. The ALJ failed to "specifically identify 'what testimony is not credible and what evidence undermines [Plaintiff's] complaints.'" Parra v. Astrue, 481 F.3d 742, 750 (9th Cir. 2007) (quoting Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995)). The ALJ failed to clearly state whether or how the determination that Plaintiff's testimony about her inability to

lift more than one pound of weight was not credible had any bearing on the credibility of Plaintiff's testimony concerning her other physical and mental symptoms, such as sitting, standing, completing tasks, and memory. See Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996) ("The ALJ must state specifically what symptom testimony is not credible and what facts in the record lead to that conclusion").

One reason given by the ALJ -- "the exaggerated manner in which she presented herself during the orthopedic consultative examination," (AR 18), as noted by the consultative examiner – is not a clear and convincing reason for rejecting Plaintiff's testimony. The word "exaggerated" appears only once in the consultative examiner's report, as follows: "The gait is widened based gait with shortened step and stride length, exaggerated in nature." (AR 174). As Plaintiff points out, it is not clear whether the consultative examiner was using "exaggerated" in a descriptive or hyperbolic manner. (Joint Stip. At 9-10). Although defendant has pieced together various portions of the consultative examiner's report in an attempt to support the ALJ's "exaggerated manner" finding, (see Joint Stip. at 19), the ALJ did not specify which portion(s) of the consultative examination report he was relying on in making the "exaggerated manner" finding, and it is not clear that the consultative examiner was indicating that Plaintiff had a tendency to exaggerate her symptoms. See Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001) (finding that the ALJ properly discredited the claimant's testimony based on the claimant's tendency to exaggerate, in light of the doctor's "observation that she was uncooperative during cognitive testing but was 'much better' when giving reasons for being unable to work").

A second reason given by the ALJ -- the lack of any mention of auditory hallucinations until the beginning of her treatment at the mental health clinic (apparently on August 30, 2010, see AR 296-97) -- is also not a clear and convincing reason for discrediting Plaintiff.

The ALJ failed to state how the absence of notations in medical records about earlier auditory hallucinations made Plaintiff's testimony less credible. To the extent that the ALJ is basing his credibility finding on Plaintiff's failure to obtain earlier mental health treatment, his credibility finding would be improper. See Regennitter v. Commissioner of Social Sec. Admin., 166 F.3d 1294, 1299-300 (9th Cir. 1299) ("[W]e have particularly criticized the use of a lack of treatment to reject mental complaints because mental illness is notoriously underreported and because ""'it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.'"") (quoting Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996).

Finally, the third reason given by the ALJ -- the lack of objective medical evidence for Plaintiff's symptoms and limitations -- cannot, by itself, support the credibility finding. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001); Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998).

**B. The ALJ Failed to Properly Assess Lay Witness Testimony**

Plaintiff asserts that the ALJ failed to properly assess the testimony of Plaintiff's friend, Dewayne Watson. (See Joint Stip. at 20-23). Defendant asserts that the ALJ properly discredited the testimony of Mr. Watson. (See Joint Stip. at 23).

At the hearing, Dwayne Watson testified to the following:

> He has known Plaintiff for about 6 years, during which time he has lived with her (AR 69). Because of her pain, she cannot stand or sit or lie down for very long. She cannot lift anything over about a pound and he has to lift things for her. She has insomnia, and sometimes she does not sleep for

two or three days. He has to help her a lot. He has to almost pick her up to get her into a car. He has to pull her up out of the bed. He has to help her with showering and bathing. She cannot cook any more because she cannot stand for a long time. During the last year, her body sometimes tenses up (like she is having a spasm) and she is unable to move (and falls), she walks around with her elbows bent and her hands partially closed, and she cannot move her head much and is very slow. (See AR 69-71).

As noted above, the ALJ found that Mr. Watson was not credible for two reasons: (1) Mr. Watson "claimed [Plaintiff] could not lift over one pound, but there is absolutely no justification for her assertions in the medical evidence"; and (2) There is no evidence supporting Mr. Watson's testimony that Plaintiff requires assistance with personal grooming and getting into a car. (See AR 18).

The Court finds that the ALJ did not give germane reasons for finding Mr. Watson's testimony not credible. See Carmickle v. Commissioner, 533 F.3d 1155, 1164 (9th Cir. 2008); Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006); Smolen v. Chater, supra, 80 F.3d at 1288-89. The lack of medical evidence supporting Mr. Watson's testimony, by itself, was not a valid reason for discrediting him. See Taylor v. Commissioner of Social Sec. Admin., 659 F.3d 1228, 1234 (9th Cir. 2011) ("'Nor under our law could the ALJ discredit [their] lay testimony as not supported by medical evidence in the record.'") (quoting Bruce v. Astrue, 557 F.3d 1113, 1116 (9th Cir. 2009); Smolen v. Chater, supra 80 F.3d at 1289 ("The rejection of the testimony of Smolen's family members because Smolen's medical records did not corroborate her fatigue and pain violates SSR 88-13, which directs the ALJ to consider the testimony of lay witnesses where the claimant's alleged symptoms are *unsupported* by her medical records."). Moreover, Mr. Watson's testimony about Plaintiff's symptoms and limitations was appropriate lay witness

testimony.  See Valentine v. Commissioner Social Security Admin., 574 F.3d 685, 694-95 (9th Cir. 2009) ("[F[riends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to [his or] her condition."); Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987)("[D]escriptions by friends and family members in a position to observe [Plaintiff's] symptoms and daily activities have routinely been treated as competent evidence.").

**C.   Remand Is Warranted**

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000).  Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits.  Id. at 1179 ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings.").  However, where, as here, the circumstances of the case suggest that further administrative review could remedy the Commissioner's errors, remand is appropriate.  McLeod v. Astrue, 640 F.3d 881, 888 (9th Cir. 2011); Harman v. Apfel, supra, 211 F.3d at 1179-81.

Since the ALJ failed to properly assess Plaintiff's and Mr. Watson's credibility, remand is appropriate.  Because outstanding issues must be resolved before a determination of disability can be made, and "when the record as a whole creates serious doubt as to whether the [Plaintiff] is, in fact, disabled within the meaning of Social Security Act," further administrative proceedings would serve a useful purpose and remedy

defects. Burrell v. Colvin, 775 F.3d 1133, 1141 (9th Cir. 2014)(citations omitted).[5]

**ORDER**

For the foregoing reasons, the decision of the Commissioner is reversed, and the matter is remanded for further proceedings pursuant to Sentence 4 of 42 U.S.C. § 405(g).

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: June 15, 2015

/s/
ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE

---

[5] The Court has not reached any other issue raised by Plaintiff except insofar as to determine that reversal with a directive for the immediate payment of benefits would not be appropriate at this time. "[E]valuation of the record as a whole creates serious doubt that Plaintiff is in fact disabled." See Garrison v. Colvin, 759 F.3d 995, 1021 (2014). Accordingly, the Court declines to rule on Plaintiff's claim regarding the ALJ's rejection of the opinion of the treating physician. Because this matter is being remanded for further consideration, this issue should also be considered on remand.